[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-11273
Non-Argument Calendar

_____

D. C. Docket No. 03-00008-CR-T-23-TGW

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 29, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE MELQUIADES, a.k.a. Jorge Melquiades,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 29, 2005)

Before ANDERSON, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

George Melquiades appeals his sentences for conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (Count One), and three counts of distributing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii) (Counts Three through Five). Because the amounts of methamphetamine not challenged by Melquiades were sufficient to support his base offense level, we find his argument regarding the district court's calculation of the methamphetamine weight attributed to him moot. Because Melquiades failed to show that a connection between the sold pistols and the offense was clearly improbable, the district court did not clearly err in applying the enhancement for possession of a weapon. Because Melquiades denied, rather than clarified, his post-arrest statements to police, the district court did not clearly err in applying the enhancement for obstruction of justice. Because Melquiades cannot show that the Booker error affected his substantial rights, the district court did not err in enhancing his sentence under the Sentencing Guidelines. Melquiades's sentence is, therefore, **AFFIRMED**.

## I. BACKGROUND

Melquiades and two co-defendants, including Zeferino Carlos, were indicted for conspiracy to possess with intent to distribute 500 grams or more of

methamphetamine and three counts of distributing 50 grams or more of methamphetamine. He pled not guilty and, following a jury trial, was convicted of all counts.

The facts, as set forth in the presentence investigation report (PSI), revealed that a confidential informant (CI) provided information to authorities that Carlos was selling methamphetamine at his business, Su-Tienda Guadalupana Restaurant. The CI subsequently received .86 gram of methamphetamine from Carlos and returned to purchase 114.8 and 235.1 grams of methamphetamine from him. During one of the purchase transactions, the CI introduced Carlos to an undercover police officer (UC) who asked Carlos about purchasing handguns.

On 8 October 2002, the UC met Carlos and Melquiades at Carlos's restaurant to negotiate the sale of two handguns and methamphetamine. Melquiades and the UC went to an adjacent business, where Melquiades sold the UC two pistols. After Melquiades told the UC that he was Carlos's methamphetamine supplier, the UC advised Melquiades that he would contact him regarding the possible purchase of one-quarter to one-half pound of methamphetamine. The UC later met with Melquiades and purchased 109.8 grams of methamphetamine. At another meeting, the UC purchased 227 grams from Melquiades, who indicated that he would obtain two fully-automatic machineguns

3

for the UC. Melquiades also stated that the methamphetamine was being stored in detergent boxes in Carlos's restaurant. The UC conducted another purchase from Melquiades of 441.8 grams of methamphetamine. The UC later went to Carlos's restaurant and observed Carlos, who had a handgun wrapped in a cloth next to him, talking to an individual.

Carlos was arrested, and several firearms were found in his residence. A search of Melquiades's residence yielded 428.4 grams of methamphetamine as well as drug paraphernalia. In a search of Carlos's restaurant and the adjacent grocery store, police seized 248.9 grams of methamphetamine hidden in a box. Melquiades admitted that he had transported methamphetamine on three occasions for an individual who was one of Carlos's suppliers. He further stated that he transported unknown amounts of methamphetamine on the first and third trips, and five pounds of methamphetamine on the second trip.

The probation officer calculated that Melquiades was accountable for four of the five pounds (1.8 kilograms) involved in the second trip, plus an additional 1.8 kilograms, which was the amount of drugs distributed to the UC plus the amount of drugs seized from Melquiades's residence and Carlos's restaurant. Based on the amount of drugs involved, the PSI calculated Melquiades's base offense level as 34, and added a 2-level increase for possession of a firearm, pursuant to U.S.S.G. §

2D1.1(b)(1). The PSI added 2 levels for obstruction of justice, in accordance with U.S.S.G. § 3C1.1, because Melquiades denied his post-arrest statement, for a total offense level of 38. The PSI determined that Melquiades's criminal history category was I, which yielded a guidelines range of 235 to 293 months in prison. Melquiades objected to the amount of methamphetamine attributed to him, denying that he admitted post-arrest to the weight of the transported methamphetamine.

At the sentencing hearing, Melquiades argued that he should be held accountable for no more than 1.4 kilograms of methamphetamine, because (1) he was not involved in Carlos's other sales; (2) the drugs found at Carlos's residence and restaurant should not be attributed to him; and (3) the weight of the drugs involved in Melquiades's trips was unknown. The district court overruled this objection.

In addition, Melquiades objected to the two-level increase in offense level for possession of a firearm, arguing that there was no testimony that he had been seen with a gun, other than those that he sold. The district court found that Melquiades could not bear the burden of establishing clear improbability that the gun was not connected with the underlying offense and overruled his objection.

Melquiades also objected to the obstruction of justice enhancement and the denial of acceptance of responsibility. Although he argued that he never told the

5

officers the weight of the transported drugs, he later conceded that he "believe[d] that he did tell the [officers] that he believed it was five pounds" but later filed an objection to the PSI stating that "he did not know the weight" of the drugs.  R10 at 46; R11 at 18, 21.  The district court overruled both objections.  Melquiades was then sentenced to a term of imprisonment of 235 months on Counts One and Three through Five, to be served concurrently.

Melquiades raises four issues on appeal.  First, he argues that the district court erred in applying a sentence enhancement based on the weight of the methamphetamine found at Carlos's restaurant because Carlos had numerous suppliers.  Second, he contends that the district court erred in enhancing his sentence based on the determination that he possessed a weapon during the offense of conviction or related relevant conduct, because the only incident involving weapons was when he delivered two pistols to the UC, with whom Melquiades had no previous dealings.  Third, Melquiades asserts that the district court erred in enhancing his sentence for obstruction of justice because the government did not prove that (1) he was acting with malice to intentionally obstruct justice, and (2) his false statement actually hindered investigation.  Fourth, he argues for the first time on appeal that the district court erred by imposing a harsher sentence than the jury verdict allowed.

6

## II. DISCUSSION

We review "a district court's factual findings for clear error and their application of the Guidelines to those facts de novo." United States v. Bradford, 277 F.3d 1311, 1312 (11th Cir. 2002) (per curiam).

### A. Drug Quantity

Melquiades argues that he should not have been held responsible for the weight of the drugs seized at Carlos's restaurant because Carlos had a number of suppliers and the source of the seized drugs was uncertain. Melquiades also contends that he should have been held responsible for only the drugs he sold to the UC and the drugs found at his residence but admits that he transported five pounds of methamphetamine.

We may "decline to consider issues raised for the first time in a reply brief." United States v. Martinez, 83 F.3d 371, 377 n.6 (11th Cir. 1996). A defendant "seeking to raise a claim or issue on appeal must plainly and prominently so indicate" such that the claims are "unambiguously demarcated." United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). "Otherwise the issue—even if properly preserved at trial—will be considered abandoned." Id. Under Section 2D1.1(a)(3) of the Sentencing Guidelines, the base offense level for more than 1.5 kilograms but less than 5 kilograms of methamphetamine is 34.

Other than stating that only the amounts found in his residence and sold by him to the agent should have been attributed to him, Melquiades failed to raise arguments in his appellate or reply brief regarding the 1.8 kilograms attributed to him from the drug shipment. Consequently, he has failed to properly challenge this amount on appeal. Since the amount transported by Melquiades–1.8 kilograms—is sufficient to support the district court's application of a base offense level of 34, Melquiades's arguments on this issue are moot. See U.S.S.G. § 2D1.1(a)(3).

B. Possession of a Weapon

Melquiades argues that the district court erred by enhancing his sentence based on the possession of a weapon during the offense because no weapons were found on him or at his residence. He also contends that there was no connection between the firearms and the drugs as he neither possessed a weapon during his discussions regarding methamphetamine nor discussed methamphetamine while he was in possession of the firearms. Melquiades maintains that he should not be held accountable for Carlos's possession of a firearm during a drug transaction because he knew only that they were in the business of selling guns but did not know that Carlos possessed one.

8

Under the Sentencing Guidelines, a two-level enhancement to a base offense level for an offense involving drugs is appropriate if the defendant possessed a dangerous weapon. U.S.S.G. § 2D1.1(b)(1). The government must show "by a preponderance of the evidence that the weapon was present at the site of the charged conduct." United States v. Diaz, 190 F.3d 1247, 1256 (11th Cir. 1999) (internal quotations and citation omitted). In United States v. Hunter, we explained that "'site of the charged conduct' includes conduct relevant to the offense of conviction, that is, acts 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" 172 F.3d 1307, 1309 (11th Cir. 1999) (citation omitted). Once the government has met its burden, the evidentiary burden shifts to the defendant to show that a "connection between the firearm[] and the offense is 'clearly improbable.'" Diaz, 190 F.3d at 1256 (citation omitted).

Melquiades sold the two pistols to the UC in the business adjacent to Carlos's restaurant. At another meeting, Melquiades said that the methamphetamine in the conspiracy was being stored in Carlos's restaurant, where the UC later observed Carlos with a handgun next to him. Additionally, a search of the restaurant and adjacent business yielded 248.9 grams of methamphetamine. Consequently, the government showed by a preponderance of the evidence that weapons were possessed at the site of the charged conduct—a conspiracy to

9

distribute methamphetamine. Melquiades failed to demonstrate that a connection between the weapons and the offense is clearly improbable, because he and Carlos both sold weapons and methamphetamine to the UC, and negotiations for the sale of both occurred at the same time. Further, Melquiades's contention that Carlos's possession of a weapon was not foreseeable is meritless, since he admits that he and Carlos were in the business of selling weapons.

C. Obstruction of Justice

Melquiades argues that the district court erred by enhancing his sentence for obstruction of justice because the government failed to show that he acted with malice and because his statements were made as a result of confusion regarding the exact amount of transported methamphetamine. He also contends that his false statement at sentencing did not hinder the government's investigation.

Section 3C1.1 of the Sentencing Guidelines provides for a two-level increase in offense level if the defendant:

> willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense. . . .

U.S.S.G. § 3C1.1.

10

Both in his written objections and at the sentencing hearing, Melquiades denied that he had made post-arrest statements to police officers regarding the weight of the drug shipment, which was relevant conduct included in the calculation of his base offense level. With such a denial, he attempted to obstruct or impede his sentencing by denying the quantity of drugs to which he had previously admitted and which had been taken into account in his base offense level. Melquaides's argument that he could not impede the investigation of the offense because the investigation was complete is without merit, because Section 3C1.1 includes attempts to obstruct or impede sentencing of the offense of conviction. See id.

D. Booker

On appeal, for the first time, Melquiades argues that, pursuant to United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), the district court erred by imposing a harsher sentence based on the enhancements for the drug quantity, weapon, and obstruction, than the jury verdict allowed.[1] He maintains that, pursuant to, his sentence should be reversed and remanded.

---

[1] Although Melquiades initially argued that the district court erred based on Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004) (holding unconstitutional the imposition of a sentencing enhancement under a state mandatory sentencing scheme based on facts neither admitted by the defendant nor proved at trial), he supplemented his argument by citing Booker.

Because Melquiades did not object on this basis in the district court, we review only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, __ U.S. __, __ S. Ct. __ (2005). Under the plain error analysis, we can not correct the error unless there is: "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. (quotation and citation omitted). Because Melquiades's sentence was enhanced under a mandatory guidelines system based on findings made by the judge that went beyond facts found by a jury, the first prong of the plain error test is satisfied. See id. The second prong of the plain error test is also satisfied because such an error is plain during appellate consideration. See id. at 1299. To satisfy the third prong of the plain-error test, a defendant

> must establish a reasonable probability that if the district court had considered the guidelines range it arrived at using extra-verdict enhancements as merely advisory, instead of mandatory, and had taken into account any otherwise unconsidered [18 U.S.C.] § 3553 factors, the court would have imposed a lesser sentence than it did.

Id. at 1302. If these three conditions are satisfied, we may then exercise our discretion as to the forfeited error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 1298 (quotations and internal citation omitted).

In Booker, the court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at __, 125 S. Ct. at 756. We have found that there is no Sixth Amendment violation under Booker where the defendant admits to the facts that were used to enhance his sentence. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).

In Rodriguez, we held that the "constitutional error" in Booker was the use of extra-verdict enhancements under a mandatory system, not the use of extra-verdict enhancements to increase a defendant's guideline range. Id. at 1300, 1301. We rejected the defendant's Blakely/Booker claim because the defendant had failed to meet his burden of showing that the imposed sentence would have been different if the district court had applied the guidelines in an advisory, rather than mandatory, manner. Id. In order to show that an imposed sentence would have been different with the advisory use of the guidelines, the defendant must show that there is a reasonable probability of a different result if the guidelines had been applied in an advisory manner. United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005).

1. Sentencing Enhancements

13

a. Drug Quantity

In the indictment, Melquiades was alleged to have conspired to possess 500 grams of methamphetamine between 1 May 2002 and 13 January 2003 (Count One), 50 grams of methamphetamine on 10 October 2002 (Count Three), 50 grams of methamphetamine on 23 October 2002 (Count Four), and 50 grams of methamphetamine on 22 November 2002 (Count Five). The jury convicted Melquiades of all counts, and by special verdict, of the quantity of drugs alleged in the indictment. The base offense level for that quantity of drugs, 650 grams of methamphetamine, is Level 32. U.S.S.G. § 2D1.1(c)(4). Melquiades, however, admitted to transporting 1.8 kilograms of methamphetamine, a quantity covered by Level 34, the level attributed to Melquiades by the probation officer. Where a defendant is sentenced based on facts to which he admitted, there is no Sixth Amendment violation under Booker. Shelton, 400 F.3d at 1330. Melquiades is thus unable to satisfy the first prong of the plain error analysis as to this issue.

b. Weapon

The indictment did not charge Melquiades with conduct involving a weapon. The probation officer's initial recommendation for an enhancement was based on Carlos's possession of a firearm on 10 December 2002, but was later expanded to incorporate Melquiades's 8 October 2002 meeting with the UC at the

14

restaurant where firearms and drugs were stored, his discussion with the UC regarding the sale of firearms and methamphetamine, and his display of several firearms to the UC, and his subsequent discussions with the UC regarding the sale of firearms. Melquiades's attorney argued that, even though Melquiades was present when the UC picked up the weapon, drug transactions were not discussed at that time. Melquiades never admitted his possession of nor presence near any firearms. The district court's factual finding was based on the evidence presented at trial. Because Melquiades's sentence was enhanced for possession of a firearm as a result of findings made by the judge that went beyond the facts admitted by Melquiades or found by the jury, the first prong of the plain error test is satisfied. See Rodriquez, 398 F.3d at 1298. Because Melquiades's appeal was pending when Booker was issued, the error is plain and the second prong of the plain error test is also satisfied. Id. at 1299.

The third prong of the test requires that Melquiades show that the error affected the outcome of the district court proceedings and, specifically, that there is a reasonable probability that the district court would have imposed a lesser sentence if it had considered the guidelines' range as advisory instead of mandatory as to the extra-verdict enhancement. Absent the weapons enhancement, Melquiades' guideline range would have been based on an adjusted offense level

15

36, or 188 to 235 months instead of 235 to 293 months. The statutory mandatory minimum for Melquiades' four counts was twenty-five years, see 21 U.S.C. §§ 841(b)(1)(A)(viii) and 841(b)(1)(B)(viii), or 300 months. Because the weapons enhancement would have made no difference in Melquiades's resulting sentence, he cannot show that there is a reasonable probability that a lesser sentence would have been imposed if the district court had considered the guidelines advisory rather than mandatory.

c. Obstruction

The district court's enhancement of Melquiades' sentence for obstruction of justice was not based on facts tried to the jury or admitted by Melquiades but was based on the district court's finding that Melquiades had admitted the quantity of drugs in his post-arrest statement which he later contested. It thus satisfies the first prong and second prongs of the plain error test. The obstruction of justice enhancement raised Melquiades' base offense level from a level 36 to a level 38, or from a range of 188-235 months to 235-293 months. Since Melquiades's minimum mandatory sentence was 25 years, Melquiades's resulting sentence would not differed without the obstruction enhancement or if the district court had applied the guidelines in an advisory instead of mandatory fashion.

### III. CONCLUSION

16

The district court did not err in calculating the drugs attributed to Melquiades, enhancing his sentence for possession of a weapon, or in applying an enhancement for obstruction of justice. Nothing in the record establishes a reasonable probability that if the district court had considered the guidelines range it arrived at using these enhancement as merely advisory, instead of mandatory, and had taken into account any otherwise unconsidered § 3553 factors, the court would have imposed a lesser sentence than it did.

**AFFIRMED.**