**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0309n.06
Filed: May 29, 2008

**Case No. 06-5774**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | WESTERN DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| MICHAEL RAY PINKERTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| ——————————————— | ) | |

**BEFORE: KENNEDY, BATCHELDER, and GRIFFIN, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Michael Ray Pinkerton appeals the denial of his motion to suppress. He also appeals his sentence, arguing that the district court miscalculated the advisory guideline range. For the reasons that follow, we AFFIRM.

**I.**

Pinkerton was driving 65 mph in a 45 mph zone. When the police signaled him to stop, he zipped into a church parking lot and abandoned the car. Fleeing on foot, Pinkerton ran around the church, through a fence, down a hill to a business with a loading dock where he attempted to hide, and then back up a hill where the police finally caught him. In Pinkerton's car, police found a .22 caliber handgun, some marijuana, and materials used for the manufacture of methamphetamine. Upon being arrested, Pinkerton signed a waiver of his Miranda rights and answered a series of self-incriminating questions, even initialing the written answers. Pinkerton contends that he was intoxicated at the time and has no recollection of answering the questions. The police did not

perceive any signs of intoxication.

The federal grand jury indicted Pinkerton for attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846; possession of equipment, chemicals, products, and materials used to manufacture methamphetamine in violation of § 843(a)(6); and possession of pseudoephedrine with intent to manufacture methamphetamine in violation of § 841(c). Pinkerton moved to suppress certain statements he made during interrogation, but the court denied that motion. Pinkerton then entered a guilty plea, pursuant to a written plea agreement. The presentence investigation report ("PSR") calculated his base offense level at 34, using an estimated drug quantity based on Pinkerton's own statement, and recommended a two-point firearm enhancement, a three-point "substantial risk of harm" enhancement, and a three-point "acceptance of responsibility" departure, resulting in an offense level of 36. The PSR set his criminal history at II. Pinkerton objected to the base offense level as well as the criminal history category, and the court, after hearing testimony and argument, determined that his total offense level was 34, but overruled his other objections. The court found that the advisory guideline range was 168 to 207 months in prison, and sentenced him to 168 months.

## II.

Pinkerton raises four claims of error on appeal — one concerning his motion to suppress evidence and three concerning the calculation of his sentence. We address each in turn.

First, Pinkerton argues that the district court erred in denying his motion to suppress. He contends that his waiver of his Miranda rights was improper because he was — by his own account — high on drugs and not feeling well, he was detained in a police car with handcuffs, and the officers resumed questioning at the DEA office without repeating the Miranda warning. The

government responds that Pinkerton's written plea agreement did not reserve the right to appeal the denial of his motion to suppress, and that Pinkerton, after explicit discussion of this fact during the plea hearing and being afforded the opportunity to withdraw his plea, entered an unconditional guilty plea. The government contends that Pinkerton waived the right to appeal the denial of the motion to suppress. The record establishes that the government is correct, and that is dispositive of this claim of error. *See* Fed. R. Crim. P. 11(a)(2); *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997).

Next, Pinkerton argues that the "substantial risk of harm" enhancement, U.S.S.G. § 2D1.1(b)(6)(B),[1] applies only to "professional laboratory conditions," and that "the court's reliance on the testimony of the officer to establish a past, present[,] or future danger in the abstract were in violation of [his] sixth amendment rights to have issues of fact submitted to a trier of facts." The government responds by citing a number of cases, including *Rita v. United States*, 551 U.S. - -, 127 S. Ct. 2456, 2465 (2007), explaining that *United States v. Booker*, 543 U.S. 220 (2005), did not eliminate judicial fact-finding altogether.

The substantial-risk-of-harm enhancement says: "If the offense involved the manufacture of . . . methamphetamine; and created a substantial risk of harm to human life . . . or the environment, increase by 3 levels." U.S.S.G. § 2D1.1(b)(6)(B) (numbering omitted). The enhancement contains no limitation to "professional laboratory conditions," but Application Note 20 explains:

> Factors to Consider - - In determining, for purposes of subsection (b)(6)(B), whether the offense created a substantial risk of harm to human life or the environment, the

---

[1]This case involved the 2005 version of the Guidelines, and this provision has since been renumbered and is currently located at U.S.S.G. § 2D1.1(b)(10)(C)(ii).

court shall include consideration of the following factors:

(i) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

(ii) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.

(iii) The duration of the offense, and the extent of the manufacturing operation.

(iv) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area) and the number of human lives placed at substantial risk of harm.

Presumably, this is the impetus for Pinkerton's "laboratory only" argument. The district court applied these factors to Pinkerton's car, as though the car were the "laboratory," and determined that the quantity of materials, manner of storage, duration and manner of the offense, and the location of the offense all combined to support a finding that Pinkerton had created a substantial risk of harm. We conclude that with regard to this enhancement, the district court did not clearly err in its findings of fact, nor did it err in its application of the Guidelines.

Next, Pinkerton argues that because he did not plead guilty to possessing a firearm, and because there is no mention of a firearm in the plea or plea agreement, there was no "finding" that he possessed a firearm and the court committed plain error by imposing the firearm enhancement, § 2D1.1(b)(1). But the police seized a handgun from Pinkerton's car at the time of the arrest; the PSR specifically increased Pinkerton's offense level by two levels because of this weapon, and Pinkerton raised no objection to that aspect of the PSR; and at the plea colloquy, the officers' finding the weapon in Pinkerton's car was included in the government's statement of the factual basis for the plea. Thus, Pinkerton conceded this fact.

Finally, Pinkerton argues that *Booker* prevents the sentencing judge from making a factual determination as to the quantity of drugs attributable to him for purposes of sentencing. The

government responds that *Booker* did not eliminate judicial fact finding, citing *Rita*, 127 S. Ct. at 2465, and that we are to review the drug-quantity calculation or estimate for clear error, *United States v. Walton*, 908 F.2d 1289, 1300 (6th Cir. 1990), and there was no clear error in this case. The government is clearly correct. In *Rita*, the Supreme Court laid to rest the claim that the sentencing court may not rely on facts not found by a jury:

> This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences.

*Rita*, 127 S. Ct. at 2465-66. And the law has long been and continues to be that "[a] district court's drug-quantity determination is a factual finding that we review under the clearly erroneous standard." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). Here, the district court relied on Pinkerton's own admissions to estimate the quantity of methamphetamine for which he was sentenced. We find no error, here, let alone clear error.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.