WIENER, Circuit Judge: *
Defendant-Appellant Rigoberto Munoz-Vargas appeals the sentence imposed following his guilty plea convictions for possession with intent to distribute approximately 1.5 kilograms of methamphetamine and for being an alien in possession of a firearm. Munoz-Vargas contends that the district court erred when calculating his base offense level because it took into account relevant conduct involved in dismissed charges. We review the district court’s fact findings on drug quantity and relevant conduct for clear error, and, finding none, we affirm.[1] Because Munoz-Vargas raised objections but did not present evidence to rebut the information in the presentence investigation report (“PSR”) concerning the relevant conduct, the district court was entitled to rely on the PSR without further inquiry.[2] In calculating a base offense level of 38, the district court found that Munoz-Vargas was responsible for a total in excess of 30,000 kilograms of marijuana or its equivalent.[3]
According to the PSR, the 1.49 kilograms of methamphetamine seized in November 2011 was the equivalent of 29,800 kilograms of marijuana. In a post-arrest interview, Munoz-Vargas admitted that he had transported marijuana hidden in the tires of the load vehicles from Houston, Texas, to Little Rock, Arkansas, and that he had traveled to Kansas to take possession of $136,500 in drug proceeds. Evidence established that the load vehicles typically carried at least 45 kilograms of marijuana and that Munoz-Vargas had traveled to Little Rock at least three times, including once in October 2011, just one month before the methamphetamine seizure. When combined with three 45-kilogram loads transported to Little Rock, the $136,500 in drug proceeds — the equivalent of 103 kilograms of marijuana — is more than enough to reach the 30,000 kilograms of marijuana necessary to justify a *208 base offense level of S8.[4] Therefore, even if we were to ignore the various other seizures of drugs and drug proceeds described in the PSR, Munoz-Vargas has not shown that the district court clearly erred in determining that his base offense level was 38.
Munoz-Vargas suggests that the district court also erred in applying a two-level increase under Section 2Dl.l(b)(12) of the United States Sentencing Guidelines because: (1) the apartment where the methamphetamine was found was not a place of manufacturing or distribution; (2). no precursor chemicals were present; (3) there was no evidence that the methamphetamine was distributed to couriers from the apartment; and (4) he did not have supervisory control or substantial effective control over the apartment. The enhancement applies if the defendant knowingly maintains a premises for the purpose of distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.[5] Munoz-Vargas admitted that he paid the rent for the apartment where the methamphetamine was found and that he used the scales found in the apartment to weigh drugs. He and his girlfriend were the only adults who had access to the apartment. His nephew admitted that he had delivered three separate loads of drugs to Munoz-Vargas at the apartment. The evidence also established an alternative basis for application of the two-level increase: Numerous coconspirators transported drugs to a residence that Munoz-Vargas shared with his wife, from which he then arranged to transport the drugs to other states. Munoz-Vargas also used this residence to store drug proceeds and arranged to transport the proceeds from the residence to Mexico. In light of the foregoing, Munoz-Vargas has not shown that the application of the enhancement was clearly erroneous.[6]
Munoz-Vargas also contends that the district court erred in applying a two-level sentencing enhancement under Section 3B1.1 of the Guidelines for his role as a manager or supervisor in the offense because the court based the application on relevant conduct that should not have been considered. The PSR amply supports the district court’s findings by showing that Munoz-Vargas recruited, supervised, and paid numerous couriers to transport marijuana and other drags from Mexico to his apartment or his residence in Houston and then to transport the drugs to other states. The district court’s finding that he was a manager or a supervisor was thus plausible in view of the record as a whole and supports the sentencing enhancement.[7]
Finally, Munoz-Vargas insists that the district court erred in applying a two-level enhancement under Section 2Dl.l(b)(14) of the Guidelines, which applied because he had received an aggravating role adjustment under § 3B1.1 and was “directly involved in the importation of a controlled substance.” The PSR recounted several specific instances when Munoz-Vargas directed individuals in the importation of marijuana from Mexico and, if successful, to his residence in Houston. *209 The district court’s finding that Munoz-Vargas was directly involved in the importation of controlled substances is therefore plausible in view of the record as a whole.[8]
AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

.United States v. Ekanem, 555 F.3d 172, 175 (5th Cir.2009) (relevant conduct); United States v. Betancourt, 422 F.3d 240, 246 (5th Cir.2005) (drug quantity); see also United States v. Juarez-Duarte, 513 F.3d 204, 208 (5th Cir.2008) (“There is no clear error if the district court’s finding is plausible in light of the record as a whole.”).

. See United States v. Scher, 601 F.3d 408, 413 (5th Cir.2010).

. See U.S.S.G. § 2D1.1(c)(1).

. See id. In drag distribution cases, we broadly define what constitutes the "same course of conduct” or "common scheme or plan,” components of relevant conduct under Section IB 1.3 of the Guidelines. United States v. Rhine, 583 F.3d 878, 885 (5th Cir.2009).

. See U.S.S.G. § 2D 1.1, comment (n. 17).

. See United States v. Villanueva, 408 F.3d 193, 203 (5th Cir.2005).

. See United States v. Cooper, 274 F.3d 230, 247 (5th Cir.2001); Villanueva, 408 F.3d at 203.

. See United States v. Rodriguez, 666 F.3d 944, 946 (5th Cir.), cert. denied, - U.S. -, 132 S.Ct. 2115, 182 L.Ed.2d 879 (2012).