# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50399

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

KENNETH JAMES BARFIELD,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 25, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, DENNIS, and HO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Kenneth James Barfield challenges his 360-month sentence for possession with intent to distribute methamphetamine. He contends that the district court erred by holding him accountable not only for the methamphetamine seized from him but also for the full quantity he confessed to having trafficked in the preceding months. Finding no clear error, we affirm.

**I.**

On April 26, 2017, 24-year-old Barfield was released from prison after serving a four-year sentence for assault of an elderly person. His freedom would not last long. Suspecting that Barfield was involved in narcotics trafficking, the Midland Police Department Narcotics Unit began surveilling

No. 18-50399

him shortly after his release. On one occasion, detectives provided a cooperating source (CS) with $475 in cash, with which he successfully purchased 12.9 grams of meth from Barfield. On November 17, 2017, the Narcotics Unit instructed a patrol officer to pull Barfield over for driving without a valid license. Inside Barfield's vehicle, the officer discovered a digital scale, needles, small plastic bags, and 23.4 grams of meth. The search also revealed $917 in cash, including the $475 Barfield had received from the CS.

Barfield was taken into custody and charged with possession with intent to distribute methamphetamine.[1] The Government sought to enhance the statutory penalty range based on Barfield's prior meth conviction.[2] Barfield pleaded guilty. The Government's proffered factual basis for the plea included the following:

> Once at the Midland Police Department, [a detective] read the defendant his Miranda warnings, and the defendant advised he understood his rights. The government's evidence would reflect that during the interview, the defendant admitted ownership to the 25.1 grams of methamphetamine,[3] located inside the vehicle. The government believes the evidence would also reflect the defendant stated that he'd gotten out of prison April of 2017 and had been selling methamphetamine since then. The government further believes that the statements made by Barfield, as reflected by the testimony of the officers, would be that he admitted to obtaining a pound of methamphetamine per week from April 2017 until his arrest.

Barfield's counsel objected to two of the prosecutor's allegations: (1) that Barfield had sold meth since his release in April 2017, and (2) that he had obtained a pound of meth per week from April until his arrest in November. He did not deny that Barfield had made those statements to police, nor did he

---

[1] *See* 21 U.S.C. § 841(b)(1)(B).

[2] *See id.* § 851.

[3] The initial field report estimated the meth seized from Barfield's vehicle to weigh 25.1 grams, but that figure was revised downward to 23.4 grams upon further evaluation.

explain the basis for his objection.

The prosecutor responded that he was "satisfied that the elements [of the crime would be] met" even if those two statements were removed from the factual basis. The Court agreed and excluded the statements, but noted that "[t]hat doesn't meant the government's giving up on them." Rather, the Court advised the parties that they "may argue about those" statements again at sentencing.

After Barfield pleaded guilty, the Probation Office prepared his PSR. Under "Offense Conduct," the PSR related:

> When Barfield was questioned by officers at the MPD, Barfield stated he had been distributing methamphetamine since he was released from prison, which was in April 2017. Barfield admitted to obtaining a pound of methamphetamine a week. . . . Barfield distributed at least 1 pound (453.6 grams) of actual methamphetamine a week as of April 2017 (27 weeks).

Based on that admission, the PSR held Barfield accountable for 12.2 kilograms of actual methamphetamine.[4] This drug quantity yielded a base offense level of 38 and, in combination with Barfield's lengthy criminal record, a Guidelines sentencing range of 360 months to life.[5]

Barfield submitted a written objection to the drug quantity alleged in the PSR, claiming that he "was extremely high on methamphetamine" when he made his post-arrest statement about receiving a pound of meth per week. In addition, Barfield claimed that he overstated his involvement in the meth trade "out of fear" and the hope that he might "talk himself out of being arrested" by indicating that he could give prosecutors information on a major

---

[4] Specifically, the Probation Office calculated that at 80% or higher purity, each pound contained 453.6 grams of actual meth, which, multiplied by the 27 weeks between Barfield's release and his re-arrest, yielded a total drug quantity of 12.2 kilograms.

[5] Barfield received a total criminal history score of 13, placing him in criminal history category VI—the highest category contemplated by the Guidelines. *See* U.S.S.G. ch. 5, pt. A.

drug-trafficking operation, rather than the minor street-level dealing he actually engaged in.

The Government did not offer a transcript or recording of Barfield's post-arrest interview, nor did it call the officers who interviewed him to testify at the sentencing hearing. Although the district judge found the defense's argument "novel" and "interesting," he ultimately concluded that Barfield's post-arrest statement had "sufficient indicia of reliability" to support the PSR's total drug-quantity figure.[6] The court overruled Barfield's objection, denied his request for a downward departure and variance, and adopted the PSR in full. When asked if he had anything to say to the court, Barfield reurged his objection to the drug quantity. He did not deny telling investigators that he had received a pound of meth per week; instead, he appeared to challenge the plausibility of his own claim, saying: "Man, I've never even seen that amount of dope. I don't have bank accounts. I didn't have large amounts of money to even sum that up." The district court imposed a sentence of 360 months—at the low end of Barfield's Guidelines range—to be followed by eight years of supervised release.

On appeal, Barfield argues that the district court erred by "including as relevant conduct an amount of methamphetamine that was not supported by an adequate evidentiary basis." He contends that a drug quantity based on "mathematical extrapolation" is only permissible if accompanied by corroborating evidence, such as testimony or recordings. In his view, the PSR's

---

[6] These statements are from the sentencing hearing in a separate case, *United States v. Casey Lee Jones*, where Barfield's attorney had raised substantially the same objection to a drug-quantity calculation based on a defendant's post-arrest admissions. Because the *Jones* hearing had taken place only a week before, both defense counsel and the district judge in this case referred to *Jones* as a shorthand for their arguments and conclusions about drug quantity. A transcript of the *Jones* hearing is included in the record. At Barfield's sentencing, the judge expressly stated that he was overruling Barfield's objection "for the same reason" as in *Jones*.

No. 18-50399

12.2-kilogram drug-weight figure was based on nothing more than "one bald, conclusory statement in the presentence report" unsupported by testimonial or documentary evidence. Moreover, Barfield argues, the Government failed to establish that the drug transactions conducted between April and November 2017 could be attributed to him as relevant conduct.

## II.

### A.

"The district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo*, while its factual findings are reviewed for clear error."[7] More specifically, the "district court's determination of what constitutes relevant conduct for purposes of sentencing" is a factual finding that "is reviewed for clear error."[8] "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole."[9] The Court will find clear error "only if a review of all the evidence leaves us 'with the definite and firm conviction that a mistake has been committed.'"[10]

### B.

In determining a defendant's base offense level, a "district court may consider other offenses in addition to the acts underlying the offense of conviction, as long as those offenses constitute 'relevant conduct' as defined in the Guidelines."[11] Relevant conduct includes "all acts and omissions [that the defendant] committed, aided, abetted, counseled, commanded, induced,

---

[7] *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (5th Cir. 2016) (internal quotation marks omitted) (quoting *United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011)).

[8] *United States v. Wall*, 180 F.3d 641, 644 (5th Cir. 1999); *see United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998) ("Factual findings regarding sentencing factors are entitled to considerable deference and will be reversed only if they are clearly erroneous.").

[9] *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam).

[10] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005)).

[11] *United States v. Rhine*, 583 F.3d 878, 885 (5th Cir. 2009); *see* U.S.S.G. § 2D1.1 n.5.

procured, or willfully caused" and which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."[12]

A defendant convicted of a drug offense is sentenced based on the amount of drugs involved in the offense.[13] In a drug-trafficking case, relevant conduct may include all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction."[14] The Guidelines instruct that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense," the district court should "approximate the quantity of the controlled substance" based on, for example, "similar transactions in controlled substances by the defendant."[15] Finally, where there are "multiple transactions," the court should add the drug quantities together and hold the defendant accountable for the total.[16]

Like all factual findings used in sentencing, relevant conduct must be proven by "a preponderance of the relevant and sufficiently reliable evidence."[17] In determining the total drug quantity attributable to a defendant as relevant conduct, "[t]he court may extrapolate . . . from any information that has sufficient indicia of reliability to support its probable accuracy."[18] Generally, a PSR "bears sufficient indicia of reliability to be considered as

---

[12] U.S.S.G. § 1B1.3(a)(1)(A); *see United States v. Schorovsky*, 202 F.3d 727, 729 (5th Cir. 2000) ("The offense level of a defendant convicted of drug trafficking is determined by the quantity of drugs involved in the offense," which "includes drugs with which the defendant was directly involved and drugs that can be attributed to the defendant as part of her relevant conduct . . . .").

[13] *See* U.S.S.G. § 2D1.1(c).

[14] *Id.* § 1B1.3(a)(2); *see Wall*, 180 F.3d at 645.

[15] U.S.S.G. § 2D1.1 n.5.

[16] *Id.* § 2D1.1 n.7.

[17] *United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013); *see* U.S.S.G. § 6A1.3 commentary; *United States v. Morrow*, 177 F.3d 272, 303 (5th Cir. 1999).

[18] *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006).

evidence by the sentencing judge in making factual determinations."[19] The standard for reliability is not meant to be onerous; indeed, even uncorroborated hearsay can support a relevant conduct finding.[20] However, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR."[21]

If the court determines that the factual allegations of the PSR are sufficiently reliable, then "the defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it."[22] However, "[i]f the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence."[23]

### III.

### A.

We turn first to Barfield's claim that the weekly meth transactions to which he confessed should not have been considered relevant conduct because the Government failed to show they were part of the "same course of conduct" or "common scheme or plan" as the drugs actually seized from him.[24] This contention is untenable under Fifth Circuit precedent. "Particularly in drug cases, this circuit has broadly defined what constitutes 'the same course of

---

[19] *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007)); *see Alford*, 142 F.3d at 832 (The court "may adopt facts contained in the PSR without further inquiry if the facts have an adequate evidentiary basis . . . .").

[20] *See United States v. Malone*, 828 F.3d 331, 337 (5th Cir. 2016).

[21] *United States v. Elwood*, 999 F.2d 814, 817–18 (5th Cir. 1993).

[22] *Zuniga*, 720 F.3d at 591 (quoting *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009)).

[23] *Id.* (quoting *United States v. Harris*, 702 F.3d 226, 231 (5th Cir. 2012)).

[24] U.S.S.G. § 1B1.3(a)(2).

conduct' or 'common scheme or plan.'"[25] To qualify as relevant conduct, "repeated instances of criminal behavior," such as separate drug transactions, need only have "sufficient similarity and temporal proximity to reasonably suggest that [they] constitute a pattern of criminal conduct."[26]

Although the record does not include a verbatim transcript of Barfield's post-arrest statement, its contents as reported in the PSR satisfy both the similarity and the temporal-proximity requirements. According to the PSR, Barfield told investigators that he had obtained and distributed a pound of methamphetamine per week for 27 weeks—that is, "since he was released from prison . . . in April 2017." By his own admission, then, Barfield carried out identical weekly drug transactions at regular, tightly spaced intervals right up until his arrest. This account leaves no doubt that Barfield engaged in "a pattern of criminal conduct."[27]

## B.

Barfield's drug-quantity challenge is at the heart of his appeal and, unlike his relevant-conduct argument, it presents a question of law not squarely addressed by binding Fifth Circuit precedent. We must decide whether it is clear error for a district court to rely on a PSR's account of a defendant's post-arrest, Mirandized admission of relevant conduct where the defendant has objected to the reliability of his own statement but has failed to introduce evidence to rebut it. In keeping with our own precedent and the weight of out-of-circuit authority, we hold that the answer is no: where a

---

[25] *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993).

[26] *United States v. Pippens*, 68 F.3d 471, 1995 WL 581901, at *3 (5th Cir. 1995) (unpublished) (per curiam) (quoting *United States v. Bethley*, 973 F.2d 396, 401 (5th Cir. 1992)).

[27] *Id.*; *see United States v. Munoz-Vargas*, 551 F. App'x 206, 207–08, 208 n.4 (5th Cir. 2014) (unpublished); *United States v. Curtis*, 96 F. App'x 223, 224 (5th Cir. 2004) (unpublished) (per curiam).

defendant does not introduce evidence to rebut his post-arrest admission of relevant conduct, the district court may consider it at sentencing.

### 1.

The closest in-circuit precedential case is our 1993 opinion in *United States v. Barnes*.[28] In *Barnes*, the Court found no clear error in the district judge's reliance on the defendant's "uncorroborated statements as proof of relevant conduct."[29] The Court explained that after Barnes was arrested, he

> stated that he had expected a 400 pound shipment of marijuana on November 8, and that he had negotiated for 100 kilograms of cocaine. These amounts were used as part of his relevant conduct in calculating the base offense level. He does not assert that he did not make the statements. He contends only that they are an insufficient basis for the finding. . . . Barnes offers no evidence which contradicts his statements, nor does he argue that they are inherently unreliable. In short, there was no clear error.[30]

In so holding, we expressly stated that a defendant's uncorroborated admission of prior drug trafficking "may be the sole basis for the findings on relevant conduct."[31]

The only potential distinction between this case and *Barnes* is that, unlike Barnes, Barfield does "argue that [his statements] are inherently unreliable" because they were "self-serving" and made under the influence of drugs. He does not, however, produce any evidence to support his alleged intoxication. Moreover, it hardly seems "self-serving" to *over*state one's involvement in criminal activity. As the Government observes, "the idea of inflating drug trafficking conduct to discourage arrest does not comport with logic or common sense. On the contrary, traditionally, a defendant downplays

---

[28] 3 F.3d 437, 1993 WL 347015 (5th Cir. 1993) (per curiam). *Barnes* is unpublished, but unpublished opinions issued prior to 1996 are precedential. 5TH CIR. R. 47.5.3.

[29] 1993 WL 347015, at *4.

[30] *Id.*

[31] *Id.*

[his own] criminal involvement."[32]

A more recent unpublished case further supports the district court's decision here. In *United States v. Humphrey*, the defendant was apprehended with only one kilogram of cocaine but "admitted to selling one fourth of a kilogram of cocaine at least once, but sometimes three times, a week during the two years before his arrest."[33] Thus, the court "estimated his past cocaine sales . . . and aggregated these amounts in its drug-quantity finding."[34] We affirmed, holding that "[t]he court properly considered Humphrey's admission . . . and plausibly determined he was not merely a one-time drug distributor."[35]

Likewise, in *United States v. Retiz*, another unpublished opinion issued in 2018, we held that the PSR's report of the defendant's post-arrest statement was sufficient to support an aggregated drug quantity.[36] As the Court recounted,

> [t]he district court adopted the PSR and its recitation of Retiz' drug-related relevant conduct. This included, *inter alia*, his admission that he personally distributed one ounce of methamphetamine per week for a year and assisted his cousin in distributing an additional ounce per week for a year, in addition to possessing and distributing cocaine and marijuana on other occasions. On the basis of those undisputed facts, the court . . . approximated the drug-quantity for sentencing purposes by aggregating the amounts reflected in the PSR. The court's drug-quantity calculation was consistent with the record, the

---

[32] *See United States v. Stephenson*, 557 F.3d 449, 457 (7th Cir. 2009) (affirming the district court's rejection of the defendant's "claim that he exaggerated the amount of his sales to curry favor and inflate his value as a potential government source").

[33] 730 F. App'x 265, 266 (5th Cir. 2018) (unpublished) (per curiam), *cert. denied*, 139 S. Ct. 575 (2018).

[34] *Id.*

[35] *Id.*

[36] 736 F. App'x 500, 501 (5th Cir. 2018) (unpublished) (per curiam), *cert. denied*, 139 S. Ct. 854 (2019).

Guidelines, and our precedent.[37]

Finally, cases from outside our circuit weigh in the Government's favor as well. In an unpublished opinion in *United States v. Pinkerton*, the Sixth Circuit held that the district court properly "relied on [the defendant's] own admissions," as reported in his PSR, "to estimate the quantity of methamphetamine for which he was sentenced."[38] In an earlier, published case, the Sixth Circuit affirmed the district court's aggregation of drug amounts based "solely o[n] statements [the defendant] made to codefendants and FBI agents while intoxicated."[39] The Seventh Circuit has likewise held that a defendant's uncorroborated admissions are proper bases for a relevant conduct finding. In *United States v. Johnson*, for example, the court held that the district judge properly relied on the PSR's account of the defendant's "post-arrest statement that he dealt one ounce of crack cocaine every day for the preceding seven to eight months."[40] The Fourth,[41] Eighth,[42] and Eleventh[43]

---

[37] *Id.*; *see also United States v. Allen*, 686 F. App'x 289, 290 (5th Cir. 2017) (unpublished) (per curiam), *cert. denied*, 138 S. Ct. 262 (2017) (affirming the district court's relevant-conduct finding based on a PSR that "contained a report detailing a post-arrest statement by Allen in which he admitted receiving each of the amounts of methamphetamine that were attributed to him").

[38] 279 F. App'x 382, 385 (6th Cir. 2008) (unpublished).

[39] *United States v. Gibson*, 985 F.2d 860, 864 (6th Cir. 1993).

[40] 342 F.3d 731, 734 (7th Cir. 2003).

[41] *See United States v. Blue*, 536 F. App'x 353, 355 (4th Cir. 2013) (unpublished) (per curiam) (affirming the district court's reliance on "drug quantities [that] were derived from a post-arrest statement that [the defendant] made . . . and from a statement made to law enforcement by a co-conspirator"); *United States v. Cummings*, 337 F. App'x 313, 315 (4th Cir. 2009) (unpublished) (per curiam) (rejecting the defendant's argument "that the district court violated his due process rights when it used his post-arrest statements about drug trafficking as relevant conduct in calculating the drug weight attributable to him").

[42] *See United States v. Wyatt*, 19 F.3d 1283, 1284 (8th Cir. 1994) (affirming the district court's drug-quantity finding based on the defendant's "post-arrest statements to authorities describing his previous crack transactions" and "testimony corroborating the statements").

[43] *See United States v. Melquiades*, 139 F. App'x 172, 177 (11th Cir. 2005) (unpublished) (per curiam) (affirming obstruction-of-justice enhancement where the defendant had denied at sentencing "that he had made post-arrest statements to police officers regarding the weight of the drug shipment, which was relevant conduct," in order to

No. 18-50399

Circuits have reached similar conclusions as to the reliability of defendants' post-arrest statements in determining relevant conduct.

Barfield offers no case law contradicting this cross-circuit consensus that a defendant's unrebutted post-arrest admissions are fair game at sentencing. Instead, he cites cases in which aggregated drug quantities were supported at sentencing by evidence other than the defendant's admission. It is true that in each case he cites, the district court relied on the testimony of witnesses other than the defendant—such as agents, informants, or coconspirators—before holding the defendant liable for an aggregated quantity of drugs.[44] However, in none of the cases did the district court *also* have the defendant's own post-arrest admission to consider.[45] It is no surprise that where a court lacks such an admission, it must rely on other sources of evidence to support an aggregated drug quantity. Barfield does not identify any case in which a court found the defendant's own admission unreliable or insufficient to support a relevant-conduct finding.[46]

---

"obstruct or impede his sentencing by denying the quantity of drugs to which he had previously admitted").

[44] *See United States v. Baggott*, 694 F. App'x 306, 307 (5th Cir. 2017) (unpublished) (per curiam) (interviews of defendant's drug suppliers); *United States v. Hinojosa*, 749 F.3d 407, 415 (5th Cir. 2014) (testimony of confidential informant and federal agent); *United States v. Rodriguez*, 666 F.3d 944, 947 (5th Cir. 2012) (witness testimony). Barfield also cites *United States v. Walter*, 683 F. App'x 323 (5th Cir. 2017) (unpublished) (per curiam), as an example of a "relevant conduct [finding] based on testimony of law enforcement officer." However, the officer in *Walter* testified only as to the offense-level enhancement the defendant received for maintaining a drug premises. *Id.* at 324; *see* U.S.S.G. § 2D1.1(b)(12). The Court's opinion does not indicate the evidentiary source of the "extrapolated drug quantity" attributed to the defendant as relevant conduct. 683 F. App'x at 324. It notes only that the drug quantity was based on "unrebutted information contained in the PSR and its second addendum." *Id.*

[45] See cases cited *supra* note 44; *cf. United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002) ("An admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case.").

[46] In the district court, Barfield did not deny that he confessed to receiving a pound of meth per week. Now, in his appellate reply brief, he attempts to divorce the PSR's contents from their source—himself—by attributing them to the Government. He characterizes the PSR's aggregated drug quantity not as a report of his own post-arrest statement but rather

No. 18-50399

## 2.

Ultimately, the question for the Court is whether Barfield's admission is "plausible in light of the record as a whole."[47] Barfield claims it is not. He urges the Court to disregard his post-arrest statement as self-serving, unreliable, and undermined by his alleged intoxication. Without any evidence to support Barfield's claims, however, we can only weigh his assertions against the account presented by the PSR—and as we have recognized, "it is proper for the district court to rely on a presentence report's construction of evidence to resolve a factual dispute, rather than relying on the defendant's version of the facts."[48] Given the illogic of Barfield's explanation for overstating his drug-trafficking activity, the lack of evidence that he was intoxicated or dishonest during his interview, and the weight of both precedential and persuasive authority, we conclude that the district court did not clearly err in holding Barfield accountable for the full quantity of methamphetamine he admitted to distributing.

## IV.

For the foregoing reasons, Appellant's conviction and sentence are affirmed.

---

as "a restatement of the prosecutor's disputed, summary proffer." As Barfield notes, a prosecutor's unsworn and unsupported allegations "do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant." *United States v. Patterson*, 962 F.2d 409, 415 (5th Cir. 1992). However, Barfield's drug-quantity figure did not originate with the prosecutor; it originated with him, and the prosecutor merely repeated it aloud at rearraignment and sentencing. Barfield's tardy attempt at recharacterization is unavailing.

[47] *Zuniga*, 720 F.3d at 590.

[48] *United States v. Robins*, 978 F.2d 881, 889 (5th Cir. 1992).