[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11887
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20110-MGC-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESSE ANDRE,
a.k.a. "J",
a.k.a. "J-Cash",

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 11, 2015)

Before ED CARNES, Chief Judge, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Jesse Andre challenges his convictions for conspiracy to possess cocaine with intent to distribute and for possession of cocaine with intent to distribute. He contends that the district court erred by denying his motion to dismiss the indictment and by refusing to permit Andre to call as a witness at trial Special Agent William Reinckens of the Drug Enforcement Administration (DEA).

**I.**

In September 2011, the DEA received two separate tips. A confidential source told an agent that Andre was involved in money laundering and drug trafficking in the Miami area, and the Broward County Sheriff's Office alerted the DEA that Jamal Peterson was selling large amounts of crack cocaine in the northern part of Broward County. Based on those two reports, the DEA began two separate investigations, one of Andre and one of Peterson. The DEA monitored Peterson and those working for him through a number of investigative techniques, including surveillance, use of a pen register, trash pulls, a cell site order, analysis of telephone records, and wiretaps. The investigators discovered that Andre was supplying cocaine to Peterson, which Peterson used to make crack cocaine for his operation. They also managed to identify the individuals working for Peterson, including Peterson's girlfriend, Judith Martinez.

The government presented this case to a grand jury in February 2013. It sought a multi-count indictment against Andre, Peterson, Martinez, and several

2

others who worked for Peterson.  At that time, the government sought only one charge against Andre:  conspiracy to possess with intent to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) and 846.

To support the charge against Andre, the government presented testimony from Agent Reinckens.  He testified that the DEA's wiretap of Peterson's phone had recorded conversations in which Peterson and Andre discussed their plan to acquire cocaine from a source in Houston, Texas.  The exchange between the prosecutor and Agent Reinckens was as follows:

> **Q.** Okay. So, let's talk about first the Texas link.  What were the substance of the calls and the information you received about them obtaining cocaine from Texas?
>
> **A.** One of the — the outset of the Title 3 intercept of Mr. Peterson's cellular telephone, calls were intercepted between Mr. Andre and another individual . . . . During the course of the discussion, Mr. Andre stated that he was attempting to purchase two kilograms of cocaine in Houston, Texas.
>
> **Q.** Okay.  And, Mr. Andre was attempting to purchase those two kilograms; were both the kilograms for Mr. Andre?
>
> **A.** No, one kilogram was for Mr. Andre and one was for Mr. Peterson.  They actually specifically stated that during one call.

The same day that Agent Reinckens testified, the grand jury issued a fifteen-count indictment that included the conspiracy-to-possess charge against Andre.  The fourteen other counts were against Peterson, Martinez, and four other defendants.  By August 2013, all of Andre's codefendants had pleaded guilty, and the government filed a superseding indictment.  Count One charged Andre with

3

conspiracy to possess with intent to distribute five or more kilograms of cocaine.

Count Two charged him with possession with intent to distribute more than 500

grams of cocaine.[1]

Andre went to trial and on the second day moved to dismiss the indictment.

Defense counsel, who had only recently received a transcript of the grand jury

proceeding, argued that the indictment should be dismissed based on prosecutorial

misconduct during the grand jury proceeding.  He pointed to Agent Reinckens'

testimony (1) that "Mr. Andre stated that he was attempting to purchase two

kilograms of cocaine in Houston, Texas"; and (2) that Andre had "actually

specifically stated" that "one kilogram was for Mr. Andre and one was for Mr.

Peterson."  Andre and Peterson had used code when discussing drugs, so neither

had used the literal words "cocaine" or "kilogram" during the call.  Defense

counsel used that fact to argue that Agent Reinckens' testimony about what Andre

had "actually specifically stated" amounted to perjury, or was at least highly

misleading.  The government responded that the prosecutor's question to Agent

Reinckens, which asked him to relay "the substance of the calls" between Andre

and Peterson, had made it clear that his testimony was summarizing the calls.  The

government also pointed to a line in the wiretap transcript in which Andre told

---

[1] That was actually the second superseding indictment.  Before settling on those two counts, the government had filed a first superseding indictment naming Andre as the sole defendant and charging him with just one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine.

4

Peterson "one is yours, one is mine," and explained that Agent Reinckens' testimony was based on that statement. The district court found that the testimony was not perjurious or intentionally misleading and denied the motion to dismiss. The government then finished presenting its case in chief, which included testimony from Peterson and Martinez, both of whom had agreed to testify against Andre as part of their plea bargains.

At the close of the government's case, Andre again moved to dismiss the indictment, which the district court denied. Defense counsel then requested permission to call Agent Reinckens to the stand. His reason for doing so was "to make my record for appeal" regarding his motion to dismiss the indictment. He first asked that he be allowed to examine Agent Reinckens "in front of the jury to question him" so that the jury could "make their factual determination" as to whether Agent Reinckens had committed perjury. The district court pointed out that it had already decided that Agent Reinckens' testimony was not perjurious and the issue was to be decided by the court and not the jury. So defense counsel pivoted and asked "to be allowed to call the witness for five minutes outside the presence of the jury to make my record for an appellate court, to question the agent as to what I believe were misrepresentations in front of the grand jury." Defense counsel never suggested that he wanted to call Agent Reinckens in order to create

5

fodder for impeaching the government's other witnesses, such as Peterson and Martinez.

Andre also made a motion for a judgment of acquittal on Count Two, arguing that the government had offered no evidence that he had possessed more than 500 grams of cocaine. The government conceded that it had failed to offer such evidence, and the court granted a judgment of acquittal on Count Two as to the amount of cocaine. It instructed the jurors that they should find Andre guilty on the remainder of the charge in that count if he "possessed, with intent to distribute, an amount of cocaine weighing less than 500 grams."

The jury found Andre guilty on both counts. The district court sentenced Andre to serve concurrent sentences of 180 and 190 months respectively on Counts One and Two.

## II.

Andre contends that the district court erred by denying his motion to dismiss the second superseding indictment and by refusing to permit him to call Agent Reinckens as a witness at trial. We review both decisions for an abuse of discretion. See United States v. Steed, 548 F.3d 961, 975 (11th Cir. 2008); United States v. Bobo, 344 F.3d 1076, 1082 (11th Cir. 2003). But where a defendant sought to admit evidence under one theory at trial and on appeal presents a

6

different theory for admitting that evidence, we review only for plain error.  See

United States v. Edwards, 696 F.2d 1277, 1281 (11th Cir. 1983).

Andre first challenges his conviction on the ground that the district court

should have granted his motion to dismiss the second superseding indictment.  He

argues that Agent Reinckens gave false testimony in support of the allegation that

Andre engaged in a conspiracy to possess cocaine with intent to distribute, and that

without the false testimony, the grand jury would not have included him as a

defendant in the indictment it issued.  Agent Reinckens did not testify at trial, yet

the jury found Andre guilty.  So even if we assume that Agent Reinckens'

testimony to the grand jury was false — and we seriously doubt that it was — the

fact that the petit jury did not hear that testimony and still found Andre guilty on

the conspiracy-to-possess charge means that he was not prejudiced by the grand

jury testimony in question.  See United States v. Flanders, 752 F.3d 1317, 1333

(11th Cir. 2014).  Any prosecutorial misconduct (or other error due to false

testimony) before the grand jury was harmless and therefore is not grounds for

reversing his conviction.  See id.; see also United States v. Mechanik, 475 U.S. 66,

70, 106 S. Ct. 938, 942 (1986) ("Measured by the petit jury's verdict, then, any

error in the grand jury proceeding connected with the charging decision was

harmless beyond a reasonable doubt.").

7

Andre's second challenge asserts that he should have been permitted to call Agent Reinckens as a witness at the trial. The theory that Andre offers for why he should have been permitted to do so is different from the one he offered at trial. As we already recounted, at trial defense counsel's justification for calling Agent Reinckens to the stand was to build a record to support an appeal based on the denial of his motion to dismiss the indictment. Now, however, Andre argues that he should have been permitted to examine Agent Reinckens in order to provide evidence for impeaching two other government witnesses: Peterson and Martinez. His argument relies on this chain of inferences: (1) when Andre cross-examined Peterson and Martinez about their plea agreements, the government rehabilitated them on redirect by pointing to the provisions in their plea agreements specifying that they would be prosecuted for perjury if they gave false testimony; (2) if Andre had been permitted to examine Agent Reinckens about his testimony to the grand jury, he could have shown the jury that Agent Reinckens testified falsely without being prosecuted; and (3) if the jury had seen that Agent Reinckens gave false testimony without any negative consequences, they would have discredited Peterson's and Martinez's testimony. That is a different rationale (if a theory that strained can be called a rationale) from the one defense counsel gave when he tried to call Agent Reinckens to testify. We therefore review this challenge for plain error. See Edwards, 696 F.2d at 1281. Under that standard, we may not reverse

8

Andre's conviction unless there is:  "(1) error, (2) that is plain, and (3) that affects substantial rights."  United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002) (alterations and quotation marks omitted).  And even if Andre's challenge satisfies those three criteria, we have discretion to reverse "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotation marks omitted).

Even if we assume, as we should not, that Andre satisfies the first two prongs of the plain-error test, he falters on the third.  His argument that cross-examining Agent Reinckens would have led the jurors to discredit Peterson's and Martinez's testimony is not just speculative but also far-fetched.  See United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005) (holding that an appellant "has not met his burden of showing that his substantial rights have been affected" if we "have to speculate" about the effect the district court's error had on the outcome of the trial).  So Andre's second challenge fails.

### III.

Though neither party raises the issue, our own review of the record reveals several discrepancies between the jury's verdict and the judgment that the district court entered.  See United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006) ("We may sua sponte raise the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors.").  We raise and address

9

those discrepancies because "[i]t is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried or found guilty of the crime recited in the judgment." United States v. Diaz, 190 F.3d 1247, 1252 (11th Cir. 1999). Regarding Count One, the written judgment's description lists only 21 U.S.C. § 846 as the statute of conviction for that count. The judgment should be amended to reflect that Andre was convicted of conspiracy to possess with intent to distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846. Regarding Count Two, the written judgment's description lists the wrong offense and the wrong statute of conviction for that count. It lists "[c]onspiracy to possess with intent to distribute less than 500 grams of cocaine," when the offense was possession with intent to distribute. Furthermore, it lists 21 U.S.C. § 846 as the statute of conviction, when Andre was charged and found guilty under two other provisions. The judgment should be amended to reflect that Andre was convicted of possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Correcting those clerical errors will not prejudice Andre. See Diaz, 190 F.3d at 1252.

**AFFIRMED; and REMANDED in part.**

10