RONEY, Senior Circuit Judge:
Edilio Diaz appeals the convictions, the 292-month sentence, and the order of forfeiture entered against him following a jury trial on charges of conspiracy to distribute cocaine, 21 U.S.C. §§ 841, 846; money laundering, 18 U.S.C. § 1957; and criminal forfeiture, 21 U.S.C. § 858. Diaz raises sixteen claims of error. We affirm on all issues concerning his convictions, sentence, and forfeiture. Due to what we determine to be a technical error in the judgment, we vacate and remand so that the error can be corrected. We dispose of many issues summarily, but some require extended discussion.
The evidence at trial established that while based in Miami, Florida, Diaz supplied forty to sixty kilograms of cocaine to Stafford Easterling and other co-conspirators for distribution in Gainesville, Florida over a ten-year period from about 1985 to 1995. The evidence presented by the government at trial consisted primarily of the testimony of Stafford Easterling and other witnesses who had been engaged to a greater or lesser degree in the conspiracy and who had entered into plea agreements. The prosecution’s case was also supported by evidence of telephone toll records indicating hundreds of calls between Diaz and Easterling during the time of the conspiracy. Further facts will be discussed as warranted by the issues addressed.

I. Trial Issues

A. Jury Instructions

Diaz contends that because he was charged in the indictment with conspiracy to distribute cocaine, and the jury was instructed on conspiracy to possess with intent to distribute cocaine, there was a constructive amendment to the indictment. See 21 U.S.C. §§ 841(a)(1), 846. Diaz argues that the instruction essentially broadened the possible basis for conviction beyond what is contained in the indictment. When it occurs, a constructive amendment violates the Fifth Amendment by exposing the defendant to criminal charges not made in the indictment against him. United States v. Keller, 916 F.2d 628, 633 (11th Cir.1990), cert. denied, 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991).
The most troublesome thing about this issue, on its face, is the reference in the record from time to time to a conspiracy “to possess with intent to” distribute, rather than to conspiracy to distribute, the crime with which the defendant was charged and convicted. Even the judgment itself refers to the wrong crime. A critical analysis of the record and the arguments made asserting error in this regard, however, reveals that, in the words of the Bard, it is “much ado about nothing.”
This is a direct appeal from a criminal conviction. The defendant was indicted for conspiracy to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846. He was tried for this offense. The jury returned a guilty verdict on a correct verdict form for “conspiracy to distribute.”
In its instructions to the jury, however, the court stated that the defendant had been charged with conspiracy to possess with the intent to distribute. 21 U.S.C. §§ 841(a)(1), 846. The court did not spe- *1252 eifically give any instructions as to the possession element, or as to the distribution element either, for that matter. The court instructed very carefully on what it took to make a conspiracy, and the way in which credibility decisions should be approached. There was no objection made to the instructions, and when invited by the judge, the attorneys did not request any instruction that was not given.
All that appears in the trial record is that after the instructions to the jury were completed, the government called to the attention of the trial judge that the verdict form about to be submitted to the jury was wrong. The verdict form was changed to reflect the charge in the indictment, and the judge simply told the jury that the verdict form was being changed with a “word or two” to reflect the indictment. The court instructed the jury that the charge in the indictment, which was given to the jury, was the charge that it should consider. Noone suggested that the written instructions to be sent to the jury room also referred to a conspiracy to possess with the intent to distribute.
The mistake appears in the record in other places. First, at sentencing the judge stated that “ ... the jury found you guilty of ... Count I being conspiracy to possess with intent to distribute cocaine in violation of 21 U.S. Code Section 841 and 846. I now find you guilty of that crime.”
Second, the Presentence Investigation Report (the “PSI”) submitted by the probation department at sentencing showed on its face that the defendant had been convicted of conspiracy to possess cocaine with the intent to distribute. The discussion in the report, however, focused on the correct conspiracy to distribute crime.
Third, and most troublesome of all, the judge signed a judgment for conspiracy to possess with the intent to distribute, a crime with which the defendant was not charged, and of which he was not found guilty.
On its face, of course, the judgment cannot stand as entered. It is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried or found guilty of the crime recited in the judgment. Even though the judgment cannot stand as entered, it is nevertheless possible for this court to vacate the judgment and remand the ease to the district court for entry of a judgment in accordance with the charge and the jury verdict. This would be appropriate, however, only if the erroneous entry of the judgment was considered a clerical error, and the correction of the judgment would not prejudice the defendant in any reversible way.
In our judgment, that is exactly the situation on this appeal and this is the proper disposition of this case for the following reasons:
First, we have reviewed all the other points of error as to the conviction argued on this appeal and find them to be without merit. But for this error the judgment would be affirmed.
Second, there was no apparent confusion as far as the jury was concerned. They had the right verdict form and were told to follow the indictment. The reference to conspiracy to possess with the intent to distribute was but one statement in several pages of instructions without elaboration. The instructions focused on conspiracy and credibility, not on possession or distribution. As the case was presented to the jury in closing argument by the attorneys, the charge of conspiracy to distribute cocaine was made quite clear. The transcript of the record of closing argument shows that the word “possession” was not mentioned by either lawyer.
Third, the thrust of the defense in this case was the lack of credibility of the government’s witnesses. There was little, if any, suggestion that the evidence they gave did not satisfy the elements of the crime charged.
Fourth, although the jury was not specifically charged on the indicted crime of conspiracy to distribute, there was no objection or request by defense counsel, al *1253 though objections and requests were specifically invited by the court, so that cannot be claimed as error on this appeal. Reading the charges as a whole, it appears that the jury was adequately charged.
Fifth, if the testimony of the government’s witnesses is true, the evidence overwhelmingly proves that the defendant was guilty of conspiracy to distribute cocaine. Whether that testimony was true was squarely put to the jury by both the instructions of the court and the argument of both counsel. It was the jury’s job to determine who was telling the truth, and who was not.
Sixth, both crimes are charged under the same statutes: 21 United States Code sections 841 and 846. The sentencing guidelines are the same, whether the defendant was convicted of conspiracy to distribute cocaine or conspiracy to possess with the intent to distribute.
Seventh, this is a conspiracy charge and the attempt to differentiate between these two crimes from a practical standpoint is a distinction without a difference. Although the defendant has cited cases drawing the clear and well-settled distinction between the substantive crimes of possession and distribution, that distinction fades when a conspiracy is charged. No cases have been cited which draw the distinction that the defendant is attempting to make in crimes of conspiracy. One might be guilty of the substantive crime of distribution without being guilty of possessing cocaine, for instance in brokering sales between the persons who actually possess the cocaine and the buyers. One might be guilty of possessing cocaine with intent to distribute without any actual distribution. Possession is a necessary element of the first crime, distribution a necessary element of the second. In a conspiracy, however, neither actual possession nor actual distribution is a necessary element of the crime. Only an agreement is necessary. A fundamental precept of the law of conspiracy converts any distinction between conspiracies to commit these two crimes into a non-issue: each conspirator is criminally responsible for all parts of the conspiracy. It is difficult to hypothesize a conspiracy to distribute cocaine where the conspiracy does not include an agreement that at least one of the conspirators will in fact possess the cocaine that is to be distributed. There cannot be distribution without cocaine. There cannot be cocaine without possession. If there is an agreement that any member of the conspiracy will possess the cocaine that is intended to be distributed, then the defendant as a member of that conspiracy is guilty of a conspiracy to possess with the intent to distribute. At the same time, he is a member of a conspiracy to distribute cocaine.
In any event, the instruction as to this added element would not seem to be reversible error. In the best case scenario for the defendant, the jury would have been instructed to find an additional element not necessary to the verdict of guilt. There was sufficient evidence in this record to support such a finding, had the jury somehow been misled into thinking it was necessary. The defendant could show no harm from the erroneous instruction as to this additional element.
In our judgment, it is this analysis which explains why neither the attorneys nor the judge paid much attention to the actual charge. This is the reason that the misstatements by the court went unnoticed. It really did not make any difference. We perceive no error in the trial based on this argument.
As to defendant’s argument about instructions not given, there was no plain error in not giving instructions not requested by trial counsel.
Because the judgment reflects the incorrect offense, however, which we regard as simply a clerical error, we vacate the judgment and remand to the district court so that a judgment may be entered in accordance with the indictment and the jury verdict.

*1254
B. Prosecutorial Misconduct

Diaz argues that the prosecutor was permitted to improperly bolster the value of the testimony of key witness Stafford Easterling by asking him during redirect examination whether he would lie before the judge in front of whom he plead guilty and who would sentence him at a later date. The prosecution made a similar reference to its witnesses’ lack of motivation to lie during closing argument.
 It is improper for the prosecution to vouch for the credibility of a government witness. United States v. Sims, 719 F.2d 375, 377 (11th Cir.1983), cert. denied, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). Because improper vouching is a mixed question of law and fact, and because the defendants objected contemporaneously at trial, our review is plenary. See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir.1991).
Diaz contends that through these statements, the prosecution inferred that the court knew evidence that was not formally before the jury, that is, the court knew the truth and would therefore know if the witnesses lied. The prosecution elicited the examination after defense counsel raised the issue of Easterling’s plea agreement, suggesting that Easterling had a motive to testify untruthfully. In closing, the prosecution made the challenged statements in the context of a discussion of the witnesses’ plea agreement.
We have held that it is perfectly proper for a prosecutor to elicit testimony regarding the truth telling portion of a plea agreement on redirect once the credibility of the witness is attacked on cross-examination. See United States v. Hilton, 772 F.2d 783, 787 (11th Cir.1985). In this case, the thrust of the defendant’s cross-examination was that the testimony of the government’s witnesses was unreliable because of the plea agreement. There was no error in the prosecutor’s presenting evidence to rehabilitate its witnesses. To the extent the prosecutor’s references to the witnesses having to reappear before the same judge for sentencing may have been “indiscreet,” any suggestion of vouching was dispelled by the court’s instruction to the jury that it should consider testimony given pursuant to a plea bargain “with more caution than the testimony of other witnesses.” Sims, 719 F.2d at 378 (an instruction that testimony given pursuant to an immunity agreement “is always to be received with caution and weighted with great care” is sufficient to dispel suggestion of vouching).
Diaz also argues the prosecutor’s remarks during closing argument were improper and inflammatory because the prosecutor suggested that Diaz was the sole supplier of drugs for north Florida. A review of the statement in context reveals that the prosecutor referred to Diaz as the source of cocaine “in this case ... for the period of time of the conspiracy alleged in this indictment.” The prosecutor’s statements do not warrant reversal of defendant’s conviction.

C. Sufficiency of the Evidence

Diaz contends the evidence was insufficient to support a conviction for either conspiracy or money laundering.
Regarding the conspiracy, Diaz argues that there was no evidence that he entered into an agreement with Easterling or the other co-conspirators, and that at most the evidence shows a series of purchases between himself and the other parties, which in and of themselves do not amount to a conspiracy.
An agreement may be proved by either direct or circumstantial evidence and a common scheme or plan may be inferred from the conduct of the participants or from other circumstances. The government is not required to prove that a defendant knew every detail or that he participated in every stage of the conspiracy. See United States v. Jones, 913 F.2d 1552, 1557 (11th Cir.1990). The evidence taken in the light most favorable to the government indicates that Diaz and the other co-conspirators understood them *1255 selves to be involved together in a single venture. The evidence shows that the defendant and Stafford Easterling met each other through William Hill, whom Diaz supplied with cocaine in 1985 or 1986. Stafford Easterling introduced his brother Woodrow to Diaz in approximately 1988, for the purpose of buying cocaine from defendant. From 1990 through 1994, defendant supplied Stafford Easterling with forty to sixty kilograms of cocaine on a regular basis. The jury, on the basis of these facts, could have found that Diaz was involved with the other witnesses in a single criminal venture.
As to the money laundering charge, the record also contains sufficient evidence to support the conviction.
Section 1957 “prohibits anyone from knowingly engaging in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity.” 18 U.S.C. § 1957(a).
Defendant argues the government failed to present any evidence that he knew the source of the $12,000 wired to him to purchase a truck in 1992 was illegal. The trial evidence established that Diaz gave East-erling United States currency to buy a truck. Easterling then directed his wife to wire transfer $12,000 from a bank in Gainesville using her mother’s business account to Diaz in Kearney, Missouri, where he purchased the truck. Easterling testified that virtually all of his business with Diaz was drug business. This evidence combined with evidence of Diaz’s income during the relevant period sufficiently supports the conviction.
Diaz also argues that the prosecutor’s question in closing argument, “Where else would $12,000 come from?” impermissibly shifted the burden to the defendant to explain where the money came from. The prosecutor’s comment could not be characterized as an indirect reference to defendant’s failure to testify because Diaz did testify as to his sources of income. Instead, the prosecutor’s remark was a permissible comment based on logical inferences from all the evidence produced at trial. As such, it was neither improper nor prejudicial.

II. Motion for New Trial on Newly Discovered Evidence

Diaz requested a new trial claiming newly discovered evidence and a Jenck’s Act violation, based on a sworn statement by co-conspirator Elliott Brand that contradicted his testimony at trial. The district court acknowledged the statement constituted newly discovered evidence, but ruled there was no Jenck’s violation because the government did not turn the evidence over to Diaz because it did not have actual possession of it. On appeal, Diaz contends the district court’s denial based on the Jenck’s violation argument does not properly dispose of the newly discovered evidence argument.
Brand’s statement is relevant solely for the purpose of impeaching his credibility. For newly discovered evidence to justify a new trial, the evidence must be material and not merely cumulative or impeaching, and must be such that it will probably produce an acquittal. See United States v. Pope, 132 F.3d 684, 688 (11th Cir.1998). Nothing in the record suggests that this statement would probably produce an acquittal. The trial court did not abuse its discretion in denying Diaz’s motion for a new trial.

III. Sentencing Issues

A. Quantity of Cocaine

Diaz argues that the district court clearly erred in assessing the quantity of cocaine involved. The court assigned Diaz a base offense level of 36 for a conspiracy involving between 50 and 150 kilograms of cocaine. See U.S.S.G. § 2Dl.l(c)(2)(1996). Diaz contends that Easterling’s testimony that Diaz supplied him with forty to sixty kilograms of cocaine is ambiguous, which should be construed in his favor, so that the assessed amount should be forty kilograms. When combined with the unchal *1256 lenged quantities sold to other co-conspirators, however, even forty kilograms gives a total that exceeds 50 kilograms. The district court committed no clear error.

B. Weapon enhancement

Diaz challenges the imposition of a two-level increase for possession of a firearm in furtherance of a drug-trafficking conspiracy under U.S.S.G. § 2Dl.l(b)(l).
The evidence established the presence of two .357 magnum revolvers at Diaz’s residence during a drug sale to Brand. A 9mm semi-automatic pistol with extra magazines and ammunition was also recovered from Diaz’s residence during a search, along with materials used in drug trafficking.
Once the government showed by a preponderance of the evidence that the weapon was “present at the site of the charged conduct,” the burden shifted to Diaz to demonstrate that a connection between the firearms and the offense was “clearly improbable.” United States v. Hall, 46 F.3d 62, 63 (11th Cir.1995) (proximity of handgun to several drug-related objects, located in the house where conversations concerning marijuana importation occurred, sufficiently showed that the handgun was possessed during the offense). Diaz failed to produce any evidence tending to show that such a connection was clearly improbable. The district court did not clearly err by imposing the enhancement.

C. Enhancement for Obstruction of Justice

Diaz argues the district court erred by imposing a two-level enhancement for obstruction of justice. See U.S.S.G. § 3C1.1 (two-level enhancement imposed if “the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.”) Diaz contends the court failed to make an independent factual finding that Diaz willfully lied at trial, but instead merely relied upon the inference created by the jury’s verdict.
In rejecting Diaz’s objection to the enhancement, the district court found:
I’m quite aware of the fact that a person who gets to trial, testifies and gives a version of facts that might be inaccurate due to confusion, mistake or some faulty memory, that in no way would operate to the detriment of the testifying defendant.
But whereas here the defendant takes the stand and categorically denies each and every aspect of the case and the testimony presented, this Court finds that the defendant was, in fact, untruthful at the trial with respect to each of the material matters and his involvement in it, and that the testimony he gave was designed to substantially affect the outcome of his case and for him to escape any responsibility.
The evidence as presented by the government and as believed by this jury categorically was opposite to ... each position ... as taken by this defendant in his testimony.
? it is preferable that the district court make specific findings by identifying the materially false statements individually, it is sufficient if the .court makes a general finding of obstruction encompassing all the factual predicates of perjury. See United States v. Arguedas, 86 F.3d 1054, 1059 (11th Cir.1996); and United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445(1993)(a defendant commits perjury who “gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.”)

D.Pre-Guidelines Sentence

We reject Diaz’s assertion that the court erred in not ascertaining from the jury whether a conspiracy existed that concluded prior to November 1, 1987, the effective *1257 date of the federal sentencing guidelines. Diaz contends that as a non-guideline offense, his recommended sentence would have been shorter, no minimum mandatory would have been imposed and he would be subject to parole.
? conspiracy such as the one in this case that began before the effective date of the guidelines and continued after that date is subject to sentencing under the guidelines. See United States v. Terzado-Madruga, 897 F.2d 1099, 1128 (11th Cir.1990). A defendant must take affirmative steps prior to the effective date to terminate and disavow any participation in the conspiracy in order for the guidelines not to apply to his sentencing. See United States v. Peeples, 28 F.3d 370, 374 (11th Cir.1994). There is no proof that Diaz took such steps. Accordingly, Diaz was properly sentenced under the guidelines.

TV. Forfeiture proceedings

Immediately after the jury returned a verdict of guilty on the conspiracy counts on February 27, 1997, the government advised the defendant and the court that it would seek the forfeiture of the defendant’s personal residence under Count III of the indictment. The property at that time was identified as the house that defendant had put up as collateral for his bond prior to trial. The forfeiture trial took place on March 10, 1997 and the jury rendered a verdict that the property located at 193000 Oakmont Drive had been obtained with proceeds from defendant’s drug trafficking activity.
Diaz argues that there was insufficient evidence to support the forfeiture of his personal residence and that the proceedings were violative of his due process rights. There was sufficient evidence to support the jury verdict, a point that we would affirm without opinion.
Diaz argues that his due process rights were violated because the indictment did not specifically identify the property the government sought, nor his interest therein, and he did not learn of the government’s intention to seek forfeiture of his home until after the guilty jury verdict was entered on the conspiracy and money laundering counts. The count in the indictment merely tracked the language of the criminal forfeiture statute, 21 U.S.C. § 853(a)(1) and (2), referring to “property constituting and derived from any proceeds the defendant obtained as the result of [the drug conspiracy]” and “property used and intended to be used in any manner or part to commit and to facilitate the commission of [the drug conspiracy].”
Diaz failed to make this argument before the district court so we review for plain error.
Rule 7(c)(2) of the Federal Rules of Criminal Procedure provides that “no judgment of forfeiture may be entered in a criminal proceeding unless the indictment ... alleges the extent of the interest or property subject to forfeiture.” The essential purpose of the notice is to inform the defendant that the government seeks forfeiture as a remedy. The designation of property subject to forfeiture is sufficiently specific if it “puts the defendant on notice that the government seeks forfeiture and identifies the assets with sufficient specificity to permit the defendant to marshal evidence in their defense.” See United States v. Cauble, 706 F.2d 1322, 1347 (5th Cir.1983)(en banc), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229(1984).
The notice given to the defendant on February 27 after the jury trial was specific enough. He knew at the time that it was his interest in the house that he had put up as collateral for his pre-trial bond. See United States v. Tanner, 61 F.3d 231, 235 (4th Cir.1995)(reference to corporation as a sole proprietorship not misleading where precise identification of property contained in indictment) cert. denied, 516 U.S. 1119, 116 S.Ct. 925, 133 L.Ed.2d 854 (1996); United States v. Puma, 937 F.2d 151, 156 (5th Cir.1991)(description of Puma’s car lot business — -“Diamond Oaks *1258 Motor Company, 4249 Denton Highway, Haltom City, Texas” and “$5,030.00 in U.S. currency” — amply sufficient notice that government sought forfeiture of all of the company’s assets), cert. denied, 502 U.S. 1092, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992); United States v. Possick, 849 F.2d 332, 340 (8th Cir.1988)(description of “a home” located at a particular address on a particular parcel of land adequate); United States v. Boffa, 688 F.2d 919, 939 (3rd Cir.1982) (“by alleging that all of the appellants’ interest in the enumerated corporations was subject to forfeiture, the indictment alleged the ‘extent of the interest or property subject to forfeiture’ ” required by Rule 7(c)(2)), cert. denied, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983); United States v. Smaldone, 583 F.2d 1129 (10th Cir.1978)(indictment seeking forfeiture of interest in business and property known as Gaetano’s Restaurant, located at 3760 Tejón Street, Denver, Colorado in compliance with Rule 7(c)(2)) cert. denied, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979).
We found no case in this circuit or any other directly addressing the question whether language in the indictment that merely tracks the statute without any further description of the property to be forfeited would satisfy Rule 7(c)(2).
The due process question, however, is whether the requirements of due process were satisfied under these circumstances. The notice required by due process is only sufficient notice reasonably calculated to apprise the defendant of the nature of the action and afford him a reasonable opportunity to defend against it. Robinson v. Hanrahan, 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). It is apparent that defendant had such notice.
Various cases have held that any deficiency in an indictment under Rule 7(c)(2) is cured when the defendant has otherwise received sufficient notice of the forfeiture proceedings, the property sought to be forfeited, and the opportunity to defend against it. See United States v. Sarbello, 985 F.2d 716 (3rd Cir.1993)(eourt not concerned about adequacy of Rule 7(c)(2) notice where defendants had de facto notice, the indictment specifically listed API as a potentially forfeitable property, and the restraining order made clear reference to API). Some cases have held that the indictment need not describe each item subject to forfeiture if this is done in a bill of particulars. See United States v. Raimondo, 721 F.2d 476, 477 (4th Cir.1983), cert. denied sub nom. 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984); United States v. Grammatikos, 633 F.2d 1013 (2nd Cir.1980), or its equivalent, see United States v. Amend, 791 F.2d 1120, 1125 (4th Cir.1986) (“government’s ‘open file’ policy ... gave [defendant] adequate notice in the same manner as a bill of particulars would have provided”), cert. denied, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986); See United State v. DeFries, 129 F.3d 1293, 1315 (D.C.Cir.1997)(“government is not required to list all forfeitable interests in the indictment, provided the indictment notifies defendants that the government will seek to forfeit all property acquired in violation of RICO”).
The defendant knew the property sought to be forfeited, had sufficient notice of the forfeiture proceeding, defended against it, and was not deprived of his right to due process.

V. The Remaining Issues

The remainder of Diaz’s issues are without merit and do not warrant extended discussion.
The district court did not plainly err in failing to sua sponte instruct the jury on the following affirmative defenses — a multiple conspiracy theory, statute of limitations defense, and “a mere buyer/seller relationship” — when these defenses were not requested by the defendant.
The court did not plainly err in admitting the testimony of a county sheriff *1259 that as a result of an investigation in 1986, an arrest warrant was executed for Diaz. Contrary to Diaz’s assertion, admission of the statement did not violate Federal Rule of Evidence 404(b). Because the evidence shows the events of the conspiracy in 1986 were “inextricably intertwined” with the evidence regarding the charged offense, it was properly admitted. United States v. Veltmann, 6 F.3d 1483, 1498 (11th Cir.1993) (“Evidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is ... inextricably intertwined with the evidence regarding the charged offense.”).
The court did not abuse its discretion in admitting Hill’s statements to Brand as a co-conspirator statement under Fed. R. Evidence 801(d)(2)(E). At the point the question was asked, the evidence of telephone records, photographs, a gun, and drug paraphernalia had been admitted and the link to Stafford Easterling had been established. See Bourjaily v. United States, 483 U.S. 171, 182-83, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); United States v. Kelly, 973 F.2d 1145, 1151 (5th Cir.1992) (“For a co-conspirator’s statement to be admitted pursuant to Rule 801(d)(2)(E), there must be a conspiracy, the statement must be made in the course of the conspiracy, and the declarant and the defendant must be members of the conspiracy.”). There is no merit to defendant’s argument based on the now vacated Tenth Circuit decision United States v. Singleton, 144 F.3d 1343 (10th Cir.1998), reversed, en banc denied, 165 F.3d 1297 (10th Cir.), cert denied, — ■ U.S. -, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999), that the prosecutor violated 18 U.S.C. § 201(c)(2) by allowing certain witnesses to enter plea agreements in exchange for their testimony.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.